UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

KATHY S. CHIN and MICHELLE L. THOMAS

MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR
JUDGMENT OF ACQUITTAL, OR, ALTERNATIVELY, A NEW TRIAL

October 17, 2019

STEARNS, D.J.

Following a four-day trial, and a day of deliberations, the jury found defendant Kathy Chin guilty of four felony violations of the federal Food, Drug, and Cosmetic Act (FDCA), 31 U.S.C. §§ 331(a), 333(a)(2) and 353(b)(1), and defendant Michelle Thomas guilty of two felony counts of the same offense.[1] The defendants, both of whom were licensed pharmacists, were convicted of dispensing drugs without prescriptions made out in the name of legitimate patients. Defendants now move for a judgment of acquittal, or in the alternative, for a new trial.[2]

---

[1] The defendants were also convicted of the lesser included strict liability iteration of the offense.

[2] As Thomas adopts as her own the arguments advanced on behalf of Chin and vice-versa, I will address both defendants' motions together.

The governing standards are familiar. Rule 29 judgments of acquittal are granted sparingly. In deciding such a motion, "we scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt." *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995), quoting *United States v. Taylor*, 54 F.3d 967, 974 (1st Cir. 1995). "Under the viewpoint principle, a jury charged with determining an accused's guilt or innocence is entitled to consider the evidence as a seamless whole. 'The sum of an evidentiary presentation may well be greater than its constituent parts.'" *Olbres,* 61 F.3d at 974, quoting *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992).

A district court's power to order a new trial pursuant to Rule 33 is greater than its power to grant a motion for acquittal. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *Id.* However, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United*

---

Thomas Mot. at 2 n.2; Chin Mot. at 2 n.2.

*States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996), quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979).

Defendants make two principal arguments in support of their motions. First, with respect to a judgment of acquittal, they contend that the evidence, most generously construed in favor of the verdict, established that their role at New England Compounding Center (NECC) was limited to insuring at the shipping point that the consigned drugs "were going to the right facility at the right address."[3] This clerical task, they argue, cannot as a matter of law constitute "dispensing" under the FDCA.[4] With respect to

---

[3] More specifically, defendants maintain that the evidence established that their jobs were those of "verification clerks" who, on receipt of orders from NECC's "confirming department," made certain "that the correct drugs were going to the correct facility at the correct address." Chin Mot. at 13. The fact that defendants were licensed pharmacists, they maintain, was irrelevant to a task that anyone with basic clerical skills could have performed.

[4] Defendants also make an argument drawn from *United States v. Park*, 421 U.S. 658 (1975), that their positions at NECC were at the bottom of the corporate ladder, and "that they cannot [be] held responsible for the wrongdoing of others higher up in the company than they, whom they did not supervise and where they were powerless to affect the policy of shipping without patient names . . . ," Chin Mot. at 4, 7-10, and as such, they lacked "the [managerial] power to prevent the act complained of." 421 U.S. at 671. As the government correctly notes, the language from *Park* that defendants rely upon relates to the liability (or potential liability) of corporate officers who themselves do not carry out the proscribed criminal acts but rather delegate them to others. Here, the defendants were charged under a

the motion for a new trial, defendants argue that they were unduly prejudiced by the severance of the trial of their cases from those of the more culpable defendants. This, they contend, forced them unfairly to defend against evidence of a "panoply" of uncharged conduct implicating others who bore far more responsibility for the day-to-day operations of NECC.

Turning first to the "dispensing" argument: defendants rely principally on this court's prior interpretation of the word "dispense" as it is used in the FDCA to define the role of a licensed pharmacist in filling a prescription for a drug. As I wrote in my decision dismissing the dispensing counts as against these defendants and defendant Alla Stepanets:

> [w]here, as here, a word of common understanding ("dispensing") is given no further definition by Congress, it is to receive its meaning in common parlance tempered by the "commonsense concession that meaning can only be ascribed to statutory language if that language is taken in context." *Riva v. Massachusetts*, 61 F.3d 1003, 1007 (1st Cir. 1995). The context here, of course, is medical pharmacology. In the world of pharmacology, a pharmacist engages in the act of dispensing when she "fill[s] a medical prescription." *Stedman's Medical Dictionary* (28th ed. 2014). In other words, a pharmacist dispenses a drug when she acts in her role as a licensed professional authorized to fill (put together) a medical

---

separate prong of the statute that imposes liability on a defendant for her own acts. *See* Gov't Br. at 12.

> prescription for delivery to a patient. Ms. Chin and Ms. Thomas are not alleged to have engaged in any conduct meeting this definition.

*United States v. Chin*, 2016 WL 5842271, at *4 (D. Mass. Oct. 4, 2016) (footnote omitted).

The Court of Appeals disagreed with my reading of the statute. Rather, the First Circuit embraced the government's argument that "dispensing" under the FDCA may comprise simply of "the kind of checking that pharmacists regularly do when filling prescriptions, i.e., confirming that legit prescriptions triggered the drug shipments." *See United States v. Stepanets*, 879 F.3d 367, 374 (1st Cir. 2018). As I explained in the wake that ruling, because a First Circuit decision on a point of law is (in the absence of an intervening, contrary Supreme Court decision), controlling in this circuit, I am bound to obey it. This is doubly so when the ruling is made in the same case that is before the district court on an order of remand. *See Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 175 (1st Cir. 2013) ("The mandate rule . . . requires a court to 'scrupulously and fully' carry out a higher court's order after remand" and "forecloses the lower court from reconsidering matters determined in the appellate court").[3]

This is not to say that the First Circuit is itself precluded from

5

revisiting the issue on appeal, which it might. While I believe that the jury was properly instructed under the First Circuit's definition of "dispensing,"[5] I remain of the view that the *Stepanets* definition conflates principles of culpability drawn from the concept of distribution under the Controlled Substances Act with the meaning of dispensing under the FDCA.[6] That may not be a matter of great significance under the misdemeanor theory of misbranding because of the absence of the element of *mens rea*. Nonetheless, I believe that the government should be held to a higher standard of proof under the felony (specific intent) branch of the crime. In other words, the felony should require proof that a defendant deliberately abused her position as a licensed pharmacist to perpetrate the fraud, and

---

[5] To comply with the First Circuit's mandate, I instructed the jury that: "The term 'dispensing' means the filling of a medical prescription and the delivery of it to the end-user patient. In other words, a pharmacist dispenses a drug when she acts in her role as a licensed professional authorized to fill a medical prescription and then delivers the drug to the end-user." In other words, to violate the "dispensing" requirement of the statute a licensed pharmacist need only play a causal role in the delivery of a drug to a patient, that is, she need not play any role in the selecting or assembling of the drug itself.

[6] In the controlled substances context, a "delivery" is defined as the transfer of possession or control of a drug from one person to another.

not simply that she "caused" a drug to be delivered.[7] But this is a ruling that only the First Circuit, and not the district court, can now make.[8]

Defendants' further argument that the evidence did not support an inference that they knew that false patient names were being used by the "confirming department" at NECC in assembling prescriptions is a matter of fact that the jury resolved against defendants with sufficient evidence to support the verdict, circumstantial in Chin's case and direct in Thomas's

---

[7] In this regard, the testimony of Samuel Penta, the Chief Investigator for the Massachusetts Board of Pharmacy, as to what a pharmacist is required to do when verifying a drug order, *see* Gov't's Mem. at 9, is consistent with my original definition of dispensing as involving the "filling" of a patient-specific prescription.

> Q. (AUSA Strachan): And when a verification pharmacist verifies a drug order, what is that verification pharmacist attesting to by their signature?
>
> A. (Mr. Penta): That they verified the prescription, the authenticity, and that it's authentic, and it's a physician and a patient, and that the drug is appropriate for the patient. There's no interactions, things of that nature, in their profile. And they dispense the correct drug, the correct amount, to the correct person.

Trial Tr. at 128 (May 1, 2019).

[8] I would agree that under what I believe to be a proper definition of dispensing, a defendant could nonetheless be convicted of aiding and abetting if she knowingly and willingly acquiesced in the wrongful conduct of others in filling the prescription at issue.

case. *See United States v. Brandon*, 17 F.3d 409, 425 (1st Cir. 1994) (holding that fraudulent intent may be established solely by circumstantial evidence).[9] In Thomas's case, the direct evidence falls into the "no good deed goes unpunished" category. As the jury learned, Thomas worked at NECC for only five months fresh out of pharmacy school. On at least two occasions she raised with her supervisors (including Barry Cadden, NECC's Head Pharmacist) the issue of the propriety of using obviously false names on the prescription orders and (regrettably) accepted assurances that the matter was of no real consequence. In the circumstantial context, the government offered the prescription order forms (with respect to both charged and uncharged conduct) that both women reviewed and often signed or initialed. As the government argues, the "patently fictitious names on customer order forms should have been obvious red flags to trained pharmacists like Defendants concerning the illegal and fraudulent conduct taking place at NECC." Gov't's Mem. at 15.[10]

---

[9] The court has previously rejected defendants' argument that to be valid, federal law does not require that a prescription be made out in the name of an actual patient, *see Chin, supra*, at *3 n.2, and sees no need to revisit the issue.

[10] I accept Thomas's objection that the government's statement in its opposition that she was responsible for "hundreds" of illicit shipments of

Defendants' final complaint, that the government failed to offer proof that they had the specific intent to defraud either the Food and Drug Administration or the Massachusetts Board of Pharmacy, *see, e.g.*, Thomas Mem. at 11, is off the mark. As the jury was instructed, that anyone or any specific victim was deceived or influenced by the fraudulent conduct is not an element of the felony misbranding offense.[11]

Turning to the severance and the allegation of undue prejudice: the short answer is that the severance was granted at the *defendants'* own request and over the government's objection. Defendants achieved their objective of avoiding the potential spillover posed by bystander status in a lengthy trial involving multiple defendants facing far more serious charges. Their late-blooming complaint of having gotten what they wished for does not sit well. Nor can the defendants reasonably fault the government for presenting some background evidence of NECC's wrongdoing – the case would have made no sense to the jury without some glimpse of the larger

---

drugs from NECC is a rhetorical exaggeration, but it is not one that was ever presented to the jury. *See* Thomas Reply at 4.

[11] Neither Chin nor Thomas was charged in the Indictment's Count III conspiracy, which did specify the Food and Drug Administration as the intended victim. Consequently, the issues of vagueness and legal impossibility, which the court flagged in the *Conigliaro-Carter* case, have no relevance here.

picture.  In my view as the trial judge, the government did not gild the lily, but rather stayed admirably within the Goldilocks standard.  AUSA Strachan succinctly presented enough evidence over a mere four days for the jury to comprehend and convict.

ORDER

For the foregoing reasons, the motions for judgment of acquittal, or, alternatively, for a new trial, are <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE