UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 14-CR-10363-RGS-11, 12 |
| | ) | |
| KATHY S. CHIN and | ) | |
| MICHELLE L. THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby submits this memorandum in support of the Government's sentencing recommendation for Defendants Michelle L. Thomas and Kathy S. Chin.

After a five-day trial, a jury unanimously convicted Ms. Chin of four counts of introducing misbranded drugs into interstate commerce with intent to defraud or mislead in violation of Sections 331(a), 333(a)(2) and 353(b)(1) of the Food, Drug, and Cosmetic Act ("FDCA") and convicted Ms. Thomas of two counts of the same offense. Specifically, a jury unanimously found that Ms. Thomas and Ms. Chin, licensed pharmacists working at New England Compounding Center ("NECC"), approved the shipment of misbranded drugs for obviously fictitious patients. While their crimes were not as serious as those committed by other pharmacists working at NECC, Ms. Thomas's and Ms. Chin's crimes were an abuse of the position of trust that each held as a licensed pharmacist in the Commonwealth of Massachusetts. Their dispensing of drugs in bulk without prescriptions put patients at risk. Moreover, Ms. Thomas's and Ms. Chin's intentional criminal misconduct allowed NECC to perpetuate the fraud that it was operating as a pharmacy and not as an unlicensed, unregulated generic drug manufacturer.

As further explained below, the United States recommends this Court sentence both Ms. Thomas and Ms. Chin to two-year periods of probation.

## MS. THOMAS'S AND MS. CHIN'S CRIMINAL CONDUCT

The Defendants' convictions were based on evidence proving that each approved numerous drug shipments for patently fictitious patients—with names like L.L. Bean, Filet O'Fish, Rug Doctor, Harry Potter, Flash Gordon and Chester Cheeto. From presiding over the Defendants' trial (and the prior trials of NECC defendants), the Court is well-versed in the facts of this case, and so only a brief recitation of the evidence demonstrating Ms. Thomas's and Ms. Chin's criminal misconduct is provided in support of the government's sentencing recommendations.

First, the jury heard *uncontroverted* evidence that Ms. Chin and Ms. Thomas, acting as licensed pharmacists, performed a final pharmacist verification before drug orders were packed and shipped to customers. Trial Tr. at 156 (April 30, 2019) (Testimony of Leliz Cedrone) ("Q: When they got to the shipping and packing area, was a final verification done before each order was packed for shipping? A: Yes. Q: And who did that? A: It was done by a pharmacist. Q: Okay. Who were the pharmacists who did that job at NECC? A: When I started working there, Alla was doing the majority of it. And Kathy would fill in sometimes. And towards the end of my time there, Kathy, and Michelle was doing it while she was there…."); Trial Tr. at 94 (April 30, 2019) (Lindsay Carvalho) (identifying Ms. Chin and Ms. Thomas as pharmacists performing the verification in the shipping area).[1] After performing their verification of the

---

[1] Kathy Chin asserts in her sentencing memorandum that "[t]here is no such thing as a 'verification pharmacist' and that was not her job or job title." Defendant Kathy S. Chin's Sentencing Memorandum, at 2. This assertion, like several others in the memorandum, is untrue and contrary to the uncontroverted evidence at trial. See Trial Tr. at 128-29 (May 1, 2019) (Testimony of Massachusetts Board of Registration in Pharmacy Chief Investigator Samuel

prescription drug orders, Ms. Chin and Ms. Thomas signed an NECC "Pharmacist's Rx Order

Verification Sheet" for each order of drugs that was to be shipped to customers.  <u>See</u> Exhibits 14-

21; 87-92.  The evidence also showed that Ms. Chin and Ms. Thomas were typically the *only*

pharmacists to review orders before they were shipped to customers.  <u>See, e.g.</u>, Trial Tr. at 97

(April 30, 2019) (Carvalho); <u>id.</u> at 99.  As a result, the pharmacist verification checks performed

by Ms. Chin and Ms. Thomas, as verification pharmacists, were a necessary part of the process

of dispensing drugs at NECC; that is, drugs *could not be shipped from NECC* until one of the

Defendants checked the order.  <u>See, e.g.</u>, Trial Tr. at 103 (April 30, 2019) (Carvalho) ("Q: All

right. And so were any of you packers allowed to send out a drug without it being verified by a

pharmacist?  A: No.");  Trial Tr. at 156 (April 30, 2019) (Cedrone) ("Q:  Did a pharmacist have

to do a final check on each order before it left the facility?  A: Yes.");  Trial Tr. at 118 (May 1,

2019) (Penta) ("Q: Can the act of verifying that a drug is being dispensed pursuant to a

prescription be delegated to a non-pharmacist?  A: No.  Q: That is an act that must be done by a

pharmacist?  A:  That's correct.").

    Second, the jury heard from Samuel Penta, the Chief Investigator for the Massachusetts

Board of Registration in Pharmacy ("MABOP"), concerning Ms. Thomas's and Ms. Chin's

responsibilities as licensed pharmacists under Massachusetts law.  Mr. Penta explained that, by

acting as verification pharmacists for drug orders, Ms. Thomas and Ms. Chin bore responsibility

for the validity of the prescriptions.  Trial Tr. at 128 (May 1, 2019) (Penta) ("Q:  And so is a

---

Penta) ("Q: "Is a verification pharmacist or final verification pharmacist an industry term?  A:
Yes.  Q:  What does it mean?  A:  It means that you make the final verification, check the
parameters of the prescription, and check the prescription and if it's safe for the patient, you
dispensed [sic] it.").

verification pharmacist thus responsible for the drug order she verifies once she has signed off [on] it?  A:  Yes.").

Finally, the evidence demonstrated that Ms. Thomas and Ms. Chin dispensed drugs without valid prescriptions—and did so with the intent to defraud and mislead regulators.  For each of the counts of conviction, the Government introduced an "NECC Prescription Order Form."  Listed on those forms were patently fictitious names, including L.L. Bean, Filet O'Fish, Coco Puff, Flash Gordon, and Chester Cheeto.  See Exhs. 14, 15, 17, 87-92.  These order forms were included along with the customer folder that was delivered to Ms. Chin and Ms. Thomas for their pharmacist verification check.  See Exhs. 14, 15, 17, 87-92.  See also Trial Tr. at 20 (May 1, 2019) (Sanda); Trial Tr. at 155 (April 30, 2019) (Cedrone).  This evidence not only showed that Ms. Thomas and Ms. Chin dispensed misbranded drugs pursuant to fake prescriptions, but also demonstrated Ms. Thomas's and Ms. Chin's knowledge and intent—the patently fake names appearing on the order forms and the complete lack of legitimate patient-specific prescriptions were obvious red flags concerning the illegal and fraudulent business practices at NECC.[2]  There were other red flags as well.  As MABOP Chief Investigator Penta testified, when he inspected NECC in 2012, he recognized that "[t]hey were – they said they were compounding products in large scale.  It appeared to be a manufacturing -- an unlicensed manufacturer, to me, based on the amount of product that I saw."  Trial Tr. at 144 (May 1, 2019).  See also id. at 146 ("[I]t was large enough to carry forklifts and dollies to move the materials around.  Not typical of a retail pharmacy.  Again, it just raised my suspicion that it was an

---

[2] The evidence specifically shows that Ms. Thomas reviewed the order form containing the names L.L. Bean, Filet O'Fish, Rug Doctor, Coco Puff, and Harry Potter, noticed these fake names, and dispensed drugs to fulfill that order nonetheless, writing on the order form: "Ok to send per Alla.  MT 3/2/12 Will notify re PT names."  Exh. 91a.

unlicensed manufacturer.").   The Government also showed that, far from isolated incidents, the

drug shipments underlying the Defendants' counts of conviction were among hundreds of illicit

and improper shipments of drugs sent from NECC.  See Exhs. 18, 21 (showing further shipments

dispensed pursuant to prescriptions written out to fake names); Exh. 19 (showing shipments

dispensed pursuant to prescriptions written out in the names of prescribing doctors or the

employees of customers); Exh. 20 (showing shipments dispensed pursuant to prescriptions

written out in the names of medical facilities); Exh. 86 (spreadsheet summarizing hundreds of

uncharged orders dispensed using fake names, the names of doctors or customer employees, or

the names of the ordering healthcare facilities).

In sum, the evidence at trial overwhelmingly showed that Ms. Thomas and Ms. Chin

turned their backs on their responsibilities as licensed pharmacists and verified bulk drug

shipments for patently fictitious patients with full knowledge of the wrongfulness of their

conduct and with intent to defraud.

## SENTENCING RECOMMEDATIONS

### A.      SENTENCING GUIDELINES

### Calculation of the Defendants' Offense Level

The government agrees with the calculations of the United States Probation Office

("USPO") regarding Ms. Thomas's and Ms. Chin's guidelines sentencing ranges ("GSR"), which

are the same.  Specifically, the Government agrees that the base offense level for each of the

counts of introducing misbranded drugs into interstate commerce with intent to defraud and

mislead is **6**, USSG §2B1.1, and that the grouped offense level is likewise **6**.  USSG § 3B1.3.

The Government also agrees that a two-level increase pursuant to § 3B1.3 applies

because Ms. Thomas and Ms. Chin, as licensed pharmacists, abused positions of public trust,

resulting in a total adjusted offense level of **8**.

Based on offense levels of 8 and criminal history categories of I, the GSR for both Ms. Thomas and Ms. Chin is **0-6 months imprisonment**.

### *Abuse of a Position of Public Trust Pursuant to § 3B1.3*

The USPO correctly applied a two-level increase pursuant to § 3B1.3 because Ms. Thomas and Ms. Chin abused positions of public trust.  A "position of trust" is one "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, cmt. n.1.  The commentary also explains that, for this adjustment to apply, "the position of public or private trust must have contributed in some way to facilitating the commission or concealment of the offense."  Id. at n.1.  In United States v. Stella, 591 F.3d 23, 26 (1st Cir. 2009), the defendant, a licensed nurse, was convicted of tampering with pain medication, such that the drugs were rendered ineffective. In affirming the adjustment for abuse of a position of public trust, the First Circuit explained, "[i]t is relevant to whether there is a position of public trust if the public expects people in the position of the defendant will comply with health and safety regulations.  Massachusetts's regulatory regime for registered nurses bears out the existence of the public's expectation that these professionals will comply with relevant laws to protect patients."  Stella, 591 F.3d at 28 (internal quotation omitted).  The First Circuit found, "[t]he district court properly concluded that [the defendant] in fact served in a position of public trust and that she had abused her position of trust."  Id. at 29; see also United States v. Mekowulu, 556 Fed. Appx. 865, 869 (11th Cir. 2014) (affirming application of abuse of trust enhancement for licensed pharmacist convicted of filling illegal prescriptions).

Ms. Chin and Ms. Thomas are licensed pharmacists who unquestionably filled positions of trust in which they exercised substantial discretion.  Licensed pharmacists hold a position of

public trust and must comply with the rules in place to protect patients – including that drugs be dispensed pursuant to valid, patient-specific prescriptions.  Moreover, it was the Defendants' positions as licensed pharmacists that allowed them to perform the criminal acts at NECC. Accordingly, the USPO correctly found that Ms. Thomas's and Ms. Chin's crimes were an abuse of a position of public trust and, pursuant to § 3B1.3, two levels should be added—as has been done for each licensed pharmacist that has previously been sentenced in this case.  See, e.g., Hearing Transcript at 45 (8/26/19) (Svirskiy Sentencing) (Stearns, J.) ("The abuse of trust issue I have already decided several times.  A license to practice pharmacy is a position of trust, and at this point nothing, I think, concerns the public as much as the safety of the drugs that are in circulation.  So we do impose trust in pharmacists.").

### Role in the Offense under USSG § 3B1.2(a)

The USPO correctly found that Ms. Chin and Ms. Thomas are not eligible for any decrease in the offense level based upon a minor or minimal role in the offense.  As the USPO explained, both defendants were charged only for the conduct in which they were directly involved.  In each case, the Defendants acted as the verification pharmacist on a shipment of drugs sent out from NECC pursuant to fictitious prescriptions.  As explained above, this final verification was a necessary step in the shipment of drugs and could only be done by a licensed pharmacist—like the Defendants.  The drugs could not be shipped from NECC until Ms. Thomas or Ms. Chin (or Ms. Stepanets) verified and cleared the drug orders for shipment.  They therefore used their licenses to play a central role in the crimes for which they were charged and convicted.

Importantly in this respect, Ms. Thomas and Ms. Chin are not subject to the broader racketeering, conspiracy, or mail fraud offenses charges against the other defendants.  The relative culpability of Ms. Thomas and Ms. Chin, as compared with other pharmacists in this

case, is properly accounted for in the adjusted offense levels of the different defendants. Ms. Thomas and Ms. Chin were not minimal actors in their crimes of conviction; they were *the* actors. No further adjustment is necessary to appropriately reflect the degree of culpability of Ms. Thomas and Ms. Chin.

### Acceptance of Responsibility Pursuant to § 3E1.1

The USPO correctly found that Ms. Chin and Ms. Thomas are not eligible for two-level decreases pursuant to § 3E1.1 for acceptance of responsibility. The First Circuit has explained that to be eligible for this adjustment, a defendant "'must demonstrate that he has taken full responsibility for his actions, and he must do so candidly and with genuine contrition.' A defendant who has elected to stand trial usually will not be able to meet this standard when he admits to wrongdoing only after the jury has spoken." United States v. Franky-Ortiz, 230 F.3d 405, 408 (1st Cir. 2000) (quoting United States v. Saxena, 229 F.3d 1, 9 (1st Cir. 2000)). The Guidelines commentary similarly states that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, cmt. n.2. Here, the Defendants have never admitted guilt.

Accordingly, the USPO correctly did not adopt a two-level downward adjustment for acceptance of responsibility.

### B.     The Section 3553(a) Factors

Following calculation of the sentencing guidelines, the Court must next turn to the factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence. See United States v. Smith, 531 F.3d 109, 111 (1st Cir. 2008); United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) (noting that a sentencing court need not consider each factor the same, or "address those

factors, one by one, in some sort of rote incantation").  The government submits that sentences of two-years of probation for Ms. Thomas and Ms. Chin are consistent with the § 3553(a) factors.

### 1.      The Need for the Sentence to Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment for the Offenses

The government submits that two-year probationary sentences for both Ms. Thomas and Ms. Chin are necessary to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Contrary to what Defendants may claim, pretrial release is not punishment for the crimes charged.  The Defendants now both stand convicted of dispensing misbranded drugs with intent to defraud and mislead, and the Court should sentence them accordingly.  It is not enough to proceed without any further punishment as if each had not been convicted.  Such a result would not be just, nor promote respect for the law.

### 2.      The Need to Provide Adequate Deterrence to Criminal Conduct

The Defendants were licensed pharmacists who abused their position of trust and dispensed drugs without valid prescriptions and with the intent to mislead regulators.  The Court must provide sentences demonstrating the seriousness of this misconduct and that are sufficient to dispel the belief that dispensing drugs without valid prescriptions is, as Ms. Chin's memorandum puts it, a "purely technical violation"—rather than a serious offense.  The crimes that were committed at NECC and all the consequences that flowed from those offenses were only possible because pharmacists decided to use their licenses to further the business's illegal practices.  A significant period of probation is necessary to achieve adequate deterrence.

### 3.      The History and Characteristics of the Defendant

This case represents both Ms. Chin's and Ms. Thomas's first encounter with the law.  The crimes charged took place in the course of their employment at NECC, a fraudulent criminal

enterprise, which is no longer in operation. It is unlikely that either Defendant will re-offend or commit additional crimes in the future.

### 4. The Kind of Sentences Available

As noted above, the Defendants' adjusted offense levels are 8, and each is in criminal history category I. Pursuant to the United States Sentencing Guidelines, the Defendants' GSR is 0-6 months and their GSR falls within Zone A, which authorizes a sentence of probation rather than incarceration. U.S.S.G. § 5B1.1(a)(1). Accordingly, a two-year sentence of probation is within the calculated GSR for the Defendants.

### CONCLUSION

For all these reasons, and for the reasons set forth in the PSRs, the United States respectfully requests that this Court sentence Defendants Michelle Thomas and Kathy Chin to periods of probation for two years, in addition to the mandatory special assessments.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Date: December 11, 2019                    By: */s/ Christopher Looney*
                                           Amanda P.M. Strachan
                                           Christopher Looney
                                           Assistant United States Attorneys
                                           One Courthouse Way, Suite 9200
                                           Boston, Massachusetts 02210
                                           (617) 748-3100

## CERTIFICATE OF SERVICE

I, Christopher Looney, hereby certify that the foregoing was filed through the Electronic Court Filing System and will be sent electronically to registered participants as identified on the Notice of Electronic Filing.

Date:  December 11, 2019                    */s/ Christopher Looney*
                                           Christopher Looney
                                           Assistant U.S. Attorney